IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BREAYONNA AARON, individually and on behalf of RICHIE TERRELL AARON, JR., deceased, and on behalf of her minor children,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, and MARQUISE L. WEBB,<br><br>Defendants. | Case No. 22-cv-00189-SRB |

**ORDER**

Before the Court is Defendant National Railroad Passenger Corporation's ("Defendant" or "Amtrak") Suggestions in Support of its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial. (Doc. #287.) As set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**I.  FACTUAL BACKGROUND**

The facts of this case have been exhaustively discussed in the Court's prior Orders and in the parties' briefs. Those facts will not be repeated herein. This Order assumes familiarity with the facts and law applicable to the claims and defenses asserted in this case. Additional facts relevant to the parties' arguments are discussed in Section III.

Briefly, Defendant is engaged in the business of transporting passengers by rail throughout the United States. As relevant here, Defendant operates two routes: the Lincoln Service route and the Missouri River Runner route. The Lincoln Service route provides transportation from Chicago, Illinois, to St. Louis, Missouri. The Missouri River Runner route

1

provides transportation from St. Louis, Missouri, to Kansas City, Missouri. Both routes make scheduled stops along the way to their final destination.

At trial, Plaintiffs introduced evidence sufficient to support a finding that Defendant: (a) had knowledge of "enough criminal activity that would have placed [it] on notice that security personnel should have been reallocated to provide security for train routes like the one" at issue; (b) Defendant did not have "procedures or protocol in place to screen for weapons on board its trains anywhere along the 500 mile trek from Chicago to St. Louis to Kansas City;" and (c) Defendant did not place personnel on the train whose job it was to provide safety or security to the passengers or to serve as a crime deterrent. (Doc. #292, pp. 14-15.)[1]

On January 14, 2022, Richie Aaron ("Mr. Aaron" or "decedent") and Marquise Webb ("Webb") boarded the Lincoln Service train in Normal, Illinois. Decedent and Webb did not know each other and were not travelling together. Later that day, decedent and Webb boarded the Missouri River Runner train in St. Louis, Missouri, and proceeded toward Kansas City, Missouri. On that day, Defendant's Conductor Marsha Lively ("Lively"), Assistant Conductor Isaac Bowser ("Bowser"), and Engineer Michael Heinicke ("Heinicke") were working on the Missouri River Runner train.

The Missouri River Runner train made a scheduled stop at a station in Lee's Summit, Missouri. Lively opened the train doors and started unloading passengers. After a few passengers exited, Webb shot decedent multiple times with a firearm.[2] At least one passenger on the train, Charles Shaw ("Shaw"), believed he heard gunshots. Shaw testified he reported this to Lively when the train had stopped in Lee's Summit.

---

[1] All page numbers refer to the pagination automatically generated by CM/ECF.

[2] On September 22, 2023, Webb pled guilty to voluntary manslaughter and other charges in the Circuit Court of Jackson County, Missouri.

At trial, Plaintiffs introduced evidence sufficient to support a finding that Defendant's employees on the train did not timely discover decedent's need for medical assistance and did not timely seek trained assistance in providing medical care. Instead, the train departed from Lee's Summit to Independence, Missouri. While the train was en route to Independence, Bowser discovered decedent and his life-threatening injuries. When the train arrived at the Independence station, emergency responders were unable to revive decedent.

On March 18, 2022, Plaintiff Breayonna Aaron, individually and on behalf of decedent, and on behalf of her minor children ("Plaintiffs"), filed this wrongful death lawsuit. Plaintiffs alleged that Defendant's negligence caused decedent's death. A jury trial commenced on January 23, 2024. In part, the Court instructed the jury to decide whether Defendant "failed to exercise ordinary care to protect [decedent] . . . by failing to make the premises reasonably safe from foreseeable criminal acts by third parties," and "failed to timely discover the need for medical attention and render aid to [decedent] following the shooting." (Doc. #259, p. 23.) On January 31, 2024, the jury rendered a verdict against Defendant and in favor Plaintiffs. The jury awarded Plaintiffs $8.8 million in compensatory damages and $150 million in punitive damages.

Defendant now moves for judgment as a matter of law, a new trial, and/or a reduction in the amount of punitive damages. Plaintiffs oppose the motion. The issues raised by the parties are resolved below.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 50(b) allows a party to move for judgment as a matter of law. Fed. R. Civ. P. 50(b). When reviewing a motion under Rule 50(b), a court must "affirm the jury's verdict unless, viewing the evidence in the light most favorable to the prevailing party . . . a reasonable jury could not have found for that party." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858,

3

865 (8th Cir. 2006) (citation omitted). The court should "review all of the evidence in the record," and "draw all reasonable inferences in favor of the nonmoving party," without making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable jury could have found for the nonmoving party." *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001).

A party may also move for a new trial under Federal Rule of Civil Procedure 59. Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Id.* When ruling on a motion for a new trial, the court has broad discretion. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). However, a Rule 59 motion serves the "limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Id.*

### III. DISCUSSION

In this case, Defendant moves for judgment as a matter of law, or in the alternative, for a new trial. Defendant's 102-page opening brief argues it is entitled to such relief on the following claims asserted by Plaintiffs: Point I—Defendant failed to render medical assistance to Mr. Aaron or discover his need for medical attention; and Point II—Defendant failed to protect Mr. Aaron from foreseeable criminal acts. Defendant also argues it is entitled to judgment as a matter of law as to punitive damages (Point III), a new trial on punitive damages (Count IV), or a

4

reduction in punitive damages (Count V). Defendant further contends it is entitled to a new trial on the issue of allocation (Count VI) because the jury improperly "allocated liability 90% to Amtrak and 10% to Webb." (Doc. #287, p. 100.) Each point raised by Defendant is accompanied by various sub-points and alleged legal errors. Plaintiffs argue the motion should be denied and that the jury's verdict is supported by the record and applicable law.

### A. Motion for Judgment as a Matter of Law/New Trial

Upon review of the record and the parties' arguments, the Court finds that Defendant is not entitled to judgment as a matter of law. For the reasons stated in Plaintiffs' opposition brief, in the Court's prior Orders, and by the Court at trial, Defendant's arguments are rejected. A reasonable jury could have found for Plaintiffs under the evidence and applicable law. *Foster*, 250 F.3d at 1194. Therefore, Defendants' Rule 50(b) motion for judgment as a matter of law is denied.

Upon review of the record and the parties' arguments, the Court finds that Defendant is not entitled to a new trial. For the reasons stated in Plaintiffs' opposition brief, in the Court's prior Orders, and by the Court at trial, Defendants' arguments are rejected. The Court finds the jury's verdict was not against the weight of the evidence, rejects Defendant's alleged legal errors, and finds there was no miscarriage of justice. *Gray*, 86 F.3d at 1480. Therefore, Defendants' motion for a new trial under Rule 59 is denied.[3]

---

[3] Although not expressly discussed herein, the Court has considered and rejects each argument advanced by Defendant in support of its motion for judgment as a matter of law and/or a new trial. For example, Defendant's reply brief argues that Plaintiffs "fail to present clear and convincing evidence to sustain a punitive damages award." (Doc. #295, p. 46) (citing Mo. Rev. Stat. § 510.261(1) (effective August 28, 2020)). This argument is rejected for the reasons previously stated by the Court and for the reasons stated by Plaintiffs.

## B. Motion for a Reduction of Punitive Damages

As an alternate ground for relief, Defendant moves for a reduction of the punitive damages award. As stated above, the jury awarded Plaintiffs $150 million in punitive damages and $8.8 million in compensatory damages. Defendant argues the jury's "punitive damages award verdict is grossly excessive and, if not set aside in its entirety, it should be reduced to a constitutionally permissible ratio of punitive to compensatory damages, which in this case should be no more than 1:1." (Doc. #287, p. 95.) Plaintiffs argue a reduction is not warranted. Alternatively, Plaintiffs argue the punitive damages award should only be reduced to a "single-digit ratio, i.e., just shy of 10:1, or $88 million." (Doc. #292, p. 103.) These arguments are addressed below.

"The Due Process Clause of the Fourteenth Amendment prohibits 'grossly excessive' civil punishment." *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012). To determine whether a punitive damage award is excessive in violation of due process, a court should consider: "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between actual or potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases." *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996)).[4]

The first consideration—reprehensibility—turns on the following factors: "whether . . . [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the

---
[4] The parties appear to agree, and the Court finds, that the third factor is not applicable and would not alter the findings in this Order. As a result, the third factor is not further discussed.

6

Case 4:22-cv-00189-SRB   Document 296   Filed 07/16/24   Page 6 of 10

conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Upon review, the first and second factors show that Defendant's conduct was reprehensible. The harm caused to Mr. Aaron was physical and not economic. The evidence also showed that Defendant's conduct evinced an indifference to or reckless disregard of the safety of others. In part, Plaintiffs introduced evidence sufficient to show that Defendant knew of violent crime on and in near its trains, did not screen passengers for weapons, and did not have personnel on the Missouri River Train to ensure that passengers did not carry firearms. Plaintiffs also introduced evidence that Defendant failed to adequately investigate the gunshot noises and failed to timely provide medical care to Mr. Aaron.

The fourth and fifth factors also support a finding of reprehensible conduct. The evidence supports a finding that:

> Amtrak knew or should have known of the dangers to passengers when the carrier has no security presence or means by which to keep weapons off the train, which supports that Amtrak's decision to have a complete absence of safety procedures or personnel on the Missouri River Runner Route was intentional, not 'mere accident' . . . and Amtrak's decision to leave all passengers on the Lincoln and Missouri River Runner Route at risk for crime was done regularly— this was not a singular, isolated incident.

(Doc. #292, p. 85.)[5] For these reasons, the record shows that Defendant's conduct was reprehensible.

The second due process consideration examines the ratio between the amount of the punitive damages award and the compensatory damages award. *Boerner*, 394 F.3d at 602. "The Supreme Court has 'consistently rejected the notion that the constitutional line is marked by a

---

[5] The third factor does not support a finding of reprehensibility because there is a lack of evidence showing that Mr. Aaron was financially vulnerable.

simple mathematical formula, even one that compares actual and potential damages to the punitive award.'" *Ondrisek*, 698 F.3d at 1029 (quoting *Gore*, 517 U.S. at 582). However, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425.

A constitutional ratio turns on the facts and circumstances of each case, but "general contours" have been identified. *Boerner*, 394 F.3d at 603. "Low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Gore*, 517 U.S. at 582. "A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* "Conversely, when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Ondrisek*, 698 F.3d at 1029 (cleaned up). Courts have recognized that compensatory damages of $1 million is substantial. *State Farm*, 538 U.S. at 426 ($1 million); *see also Ondrisek*, 698 F.3d at 1029 ("[T]he $3 million compensatory damages awarded to each plaintiff are substantial.") Judge Duane Benton in *Onderisek* provided an enormously helpful chart tracking the ratio of each punitive damage award and the level affirmed by the Circuit court. Five circuit opinions reduced the ratio to 4:1; five decisions reduced the ratio to a different amount. *Ondrisek*, 698 F.3d at 1031, Appdx.

Under the circumstances of this case, and in accordance with the foregoing case law, the Court must reduce the punitive damages award in this case. First, the ratio between punitive damages ($150 million) and compensatory damages ($8.8 million) is nearly 17:1. This far exceeds a single-digit ratio and raises due process concerns. *State Farm*, 538 U.S. at 425.

Second, the compensatory damages award of $8.8 million is unquestionably substantial. *Id.* at

426. This further "lead[s] to the conclusion that a low ratio is called for here." *Boerner*, 394

F.3d at 603. Third, "factors that justify a higher ratio, such as the presence of an 'injury that is

hard to detect' or a 'particularly egregious act [that] has resulted in only a small amount of

economic damages,' are absent here." *Boerner*, 394 F.3d at 604 (quoting *Gore*, 517 U.S. at 582).

The Court must next determine the appropriate reduction. Defendant argues the ratio

"should be no more than 1:1," and Plaintiffs argues the ratio should be "just shy of 10:1." (Doc.

#287, p. 95; Doc. #292, p. 103.) Upon review of the record and applicable case law, the Court

finds that neither ratio is appropriate. A 1:1 ratio is not appropriate because it would not achieve

"proper punishment and to deter similar reprehensible" conduct. *Ondrisek*, 698 F.3d at 1031.

As explained by Plaintiffs, the evidence supports a finding that:

> 125,000 passengers rode the Missouri River Runner Route annually and that
> nearly 1.5 million rode the route going back just 12 years. Despite this
> volume of passengers, Amtrak . . . did not it did not assign a single police
> officer to ride the trains or secure the trains at the boarding stations. Amtrak
> also . . . made no efforts to screen for weapons or keep a lookout for weapons
> . . . Amtrak has repeated its conduct of consciously disregarding the safety of
> Missouri passengers for years.

(Doc. #292, pp. 99-100.) For the reasons stated by Plaintiffs, and for the reasons discussed

above, a 1:1 ratio is too low.

However, Plaintiffs' proposed ratio is too high. Based on the substantial compensatory

damage award, a ratio of 4:1 "would comport with the requirements of due process" and the case

law discussed above. *Boerner*, 394 F.3d at 603. This ratio results in a total punitive damages

award of $35,200,000. This amount comports with due process, as it is "sufficient to achieve

proper punishment and to deter similar reprehensible" conduct. *Ondrisek*, 698 F.3d at 1031.

9

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant National Railroad Passenger Corporation's Suggestions in Support of its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial (Doc. #287) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Plaintiffs' punitive damages award is REMITTED from $150,000,000 to $35,200,000. The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 16, 2024